IN THE UNITED STATE DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CARL WARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 15 C 7988 |
| v. ) | |
| ) | Judge Joan H. Lefkow |
| BOARD OF EDUCATION OF THE ) | |
| CITY OF CHICAGO, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Carl Ward filed a single-count complaint against his former employer, the Board of Education of the City of Chicago, alleging unlawful employment discrimination based on retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq*. The Board has moved for summary judgment. For the reasons set forth below, the motion is granted.[1]

---

[1] The court's jurisdiction rests on 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3). Venue is proper in this district under 28 U.S.C. § 1391(b). The court applies the established legal standards for ruling on a motion for summary judgment. *See Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Scott* v. *Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007); *see also Wojtanek* v. *Dist. Lodge No. 8*, No. 8 C 7074, 2011 WL 248495, *2 (N.D. Ill. Jan. 25, 2011) (Lefkow, J., setting out summary judgment standards).

# BACKGROUND[2]

Ward became employed by the Board on July 30, 2007. From November 8, 2010 until his termination on November 15, 2013, he held the position of Engineer II at Emmett Louis Till Math and Science Academy ("Till"). Charles Asiyanbi was the principal of Till ("the Principal") throughout Ward's time at Till. The Principal supervised and was responsible for reviewing Ward's performance. His direct supervisor was Juan Miranda.

Ward was evaluated for the 2011-2012 school year and received a rating of "Fair."[3] As explained in the marginal note, the court finds it established for purposes of this motion that Ward was evaluated and was aware of the 2011-2012 performance rating. He was also evaluated

---

[2] The facts in the background section are taken from the parties' Local Rule 56.1 statements of facts and construed in the light most favorable to Ward. The court will address many but not all of the factual allegations in the parties' submissions, as the court is "not bound to discuss in detail every single factual allegation put forth at the summary judgment stage." *Omnicare, Inc.* v. *UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011). In accordance with its regular practice, the court has considered the parties' objections to statements of fact and included in this background only those portions of the statements and responses that are appropriately supported and relevant to the resolution of this motion.

The court has drawn inferences in favor of Ward where appropriate. Many of Ward's assertions are flat denials of allegations of misconduct made by the Principal at Till. In one-on-one conversations, the court must assume that Ward's version is true unless demonstrably false. *See Russell* v. *Bd. of Trustees*, *Univ. of Ill. at Chi.*, 243 F.3d 336, 340 (7th Cir. 2001) ("[S]ummary judgment is a singularly inappropriate time to resolve a 'he said, she said' kind of dispute.") Some of Ward's other assertions are merely conclusions. As the non-moving party, Ward must support his case by pointing to disputes of material fact that make the case appropriate for trial. He may not rely on conclusory assertions because such assertions do not provide the court with specific substantiating evidence, as required under Fed. R. Civ. P. 56 to create a genuine issue of material fact. *Carter* v. *Am. Oil Co.*, 139 F.3d 1158, 1162-63 (7th Cir. 1998)(citing *Drake* v. *Minn. Mining and Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998); *cf. Lujan* v. *Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990) ("The object of [Rule56(e)] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit.")). The court is not required in considering this motion to assume the truth of Ward's naked assertions or "to scour the record to unearth material factual disputes." *Carter*, 139 F.3d at 1163.

[3] Ward denies receiving a performance rating for the 2011-2012 school year. Documentation provided by the Board reflects that Ward was evaluated for the 2011-2012 and 2012-2013 school years, and a copy of a performance evaluation for Ward reflects that on June 1, 2012, he refused to sign the evaluation. (Dkt. 38-5). Although the Board has not submitted an affidavit laying a foundation for any of these records, plaintiff has not objected and the court will assume that a proper foundation for admission under Federal Rule of Evidence 803(6) could be laid for Board records such as these. The court does not credit Ward's bare denial other than allowing the possibility that he refused to accept a copy of his evaluation.

for the 2012-2013 school year but may not have known of the 2012-2013 rating until after he was no longer employed by the Board.[4]

The Board's Employee Discipline and Due Process Policy ("the Policy") sets forth the discipline and discharge procedures for all school-based employees. It provides, as relevant here, that "[p]rior to the issuance of discipline against a School-Based Educational Support Personnel [as relevant here, the Principal] shall issue a Cautionary Notice to the School-Based Educational Support Personnel, unless deemed not practical such as in cases involving egregious or serious rules violations." A cautionary notice is defined as "[a] non-disciplinary written statement to an employee advising him that the described misconduct is unacceptable and will lead to formal discipline if repeated."

On July 20, 2012, Ward received four cautionary notices based on incidents that occurred between April 17, 2012 and July 20, 2012.[5] The first, dated April 18, 2012, faulted Ward for being inattentive to duty and intentionally failing to manage or supervise staff on April 17, 2012. Certain photographs attached to the notice, presumably intended to show the deficiencies, in

---

[4] Ward denies receiving a performance rating for the 2012-2013 school year. An electronic record submitted by the Board (dkt. 38-5) reflects that Ward was rated for the 2012-2013 school year, although a copy of the evaluation is not in evidence. Because there is uncertainty as to when Ward became aware of the rating, however, the court will assume for purposes of this decision that he may not have been aware of the unsatisfactory rating until after his termination.

[5] Five cautionary notices were submitted into evidence. Ward states that he received only four, all on July 20, 2012. Although the scanned copies of each cautionary notice show that five were issued to Ward on three separate dates, the Board is willing to accept that there were four for purposes of this motion. Only four notices were discussed at the discharge hearing, those dated April 18, June 1, June 6 and July 20, 2012. The Board denies that Ward received all of the notices on July 20, and there is documentary evidence to the contrary. Nonetheless, the court accepts Ward's word in the absence of any testimony or affidavit laying foundation for admissibility of the documents or testimony of a witness who met with Ward on a different date.

3

Ward's opinion demonstrate that the areas photographed were clean and orderly and that Ward had discharged his duties adequately.[6]

A cautionary notice dated June 1, 2012 asserted that Ward "continues to be absent" and advised Ward to attend work every day except in cases of extreme emergency and to notify the Principal when absent. Ward's attendance records submitted by the Board along with the cautionary notice (but presumably not attached to the notice because the dates extend beyond July 20, 2012) do not reflect any absences other than three vacation days and two sick days taken during the preceding month or, for that matter, any other apparently unauthorized absences between January 1, 2012 and July 26, 2012.[7] Although Ward's Affidavit denies that his attendance was faulty, Ward admitted during his deposition he had been absent "maybe twice" between May 1 and July 20 and had been one hour late at least one time. (Dkt. 59-1 at 63-64). The testimony is credited over the Affidavit.

A cautionary notice dated June 6, 2012 cited Ward for insubordination, incompletely or inefficiently performing duties, and intentionally failing to manage or supervise staff, all on June 6, 2012. Ward asserts that the accusations were unfounded. A notice dated July 20, 2012 accused Ward of leaving work 30 minutes early on July 19, 2012, negligently failing to carry out a rule, order or directive, leaving his duty assignment without permission, insubordination, violation of

---

[6] Ward admits that the cautionary notice alleges that he was inattentive to duty and failed to supervise. He denies the conduct of which he was accused and states in his Affidavit that the accusations are false.

[7] Although the Board disputes Ward's characterization of his attendance records as indicating no unexcused absences predating July 27, 2012, his statement is supported by the attendance records. The court accepts Ward's denial in part. Ward admitted in his deposition, concerning this notice that he had been absent "maybe twice" between May 1 and July 20 and had been one hour late at least one time. (Dkt. 59-1 at 63-64).

4

school rules, and repeated or flagrant acts of "Group 3 misconduct."[8] Ward admitted in his deposition that he left work early on July 19.[9]

On October 30, 2012, the Principal confronted Ward while he was attempting to sign out early. In the ensuing conversation, according to the Principal, Ward yelled at him using words to the effect of "I'm leaving, see you, write it up, fuck you!" and "You heard what I said. I'm tired of this motherfucker." Immediately following this "October Incident," the Principal reported to Thomas Krieger, Assistant Director of Employee Engagement, that Ward had "directed verbally abusive and profane language toward the principal and exhibited gross insubordination." The Principal requested that Ward be removed from Till. According to Ward, the Principal, not he, had used the objectionable language and falsely accused Ward.[10]

Ward was notified by letter dated November 14, 2012 that he was to be suspended immediately with pay pending the outcome of a pre-suspension hearing to address the Principal's allegations regarding the October Incident. The hearing took place on December 5, 2012. Ward's union representative asserted Ward's denial of the accusations and urged that he remain in pay status until an investigation had been completed. The Deputy General Counsel, James Ciesil, requested that Ward be suspended without pay.[11] The CEO of Chicago Public Schools, Barbara

---

[8] Group 3 misconduct refers to acts that "disrupt the orderly educational process." (Dkt. 38-8).

[9] Ward denies he left work early on July 19 but he admitted it in his deposition that his hours were 8:00 to 4:00 and he left at 3:30, but he explained that his direct supervisor gave him permission to come early and leave early. (Dkt 59-1 at 69-70).

[10] Ward asserts that the email shows that the Principal actually made an epithet about Ward to Krieger rather than that Ward made that epithet about the Principal. The email is in evidence, however, so the statements therein are undisputed and support the Board's version of what was stated.

[11] Ward disputes the Board's characterization of what Ciesil said during the Pre-Suspension Hearing, but this is not a genuine issue of material fact, as it is undisputed that the Pre-Suspension Hearing was held in response to the Principal's allegations regarding the October Incident. Ward also affirmatively states that his co-worker James Sims ("Sims") testified at the Pre-Suspension Hearing, that

5

Byrd-Bennett, accepted Kreiger's recommendation and Ward was notified in a letter dated December 14, 2012 that he was to be suspended without pay, effective December 18, 2012.

On January 30, 2013, Ward filed a charge of discrimination ("First Charge") with the Illinois Department of Human Rights (automatically cross-filed with the EEOC) alleging discrimination "during" his employment based on his race, color, age, and national origin.

On February 11, 2013, the Board assigned the Law Department's Investigation Unit to investigate the October Incident. Ward was informed on March 28, 2013 that he would be reinstated to pay status retroactive to March 12, 2013 but would remain suspended until the pending charges were resolved. On April 17, 2013 the Law Department issued an Investigative Memorandum finding credible evidence to support the allegation that on October 30, 2012 Ward signed out early and made the statements attributed to him by the Principal. A recommendation that Ward be discharged was conveyed to the CEO, who approved it. This led to a July 12, 2013 notice to Ward of specific "Charges and Specifications". A discharge hearing was set for July (but later continued).

Meanwhile, for reasons arising from budget shortfalls, the Board closed 50 schools at the end of the 2012-2013 school year. This resulted in a staffing surplus of engineers. Later, the Board's Office of Management and Budget determined that approximately 25 engineers would be laid off in the fall of 2013.

According to the collective bargaining agreement between the Board and the International Union of Operating Engineers, AFL-CIO, Local 143-143B, when regularly appointed engineers were to be laid off, the layoffs would be conducted by inverse seniority except that engineers rated Unsatisfactory would be laid off first regardless of seniority. On

---

he (Sims) did not hear Ward make any of the statements ascribed to Ward. Any statement by Ward made to prove what Sims said is inadmissible hearsay. Fed. R. Evid. 801(c)(1)-(2); Fed. R. Evid. 802.

November 1, 2013, 25 engineers rated unsatisfactory, including Ward, were given notice that they would be laid off effective November 15, 2013.

A discharge hearing was held on November 15, 2013 before a Board-employed hearing officer. Ward was represented by the union president, who presented several defenses to the allegations. Ward testified, essentially denying the facts underlying the investigation. In a written decision, the hearing officer determined that Ward's conduct violated several sections of the Policy, including sections that merit discharge[12] but, because Ward had been laid off, he was eligible to reapply for future employment with the Board.

On March 3, 2014, Krieger recommended to the CEO that Ward's layoff be converted to a termination and, based on that recommendation, the Board terminated Ward's employment. On April 2, 2014, a Do Not Hire ("DNH") designation was placed in Ward's personnel file.

On April 1, 2014, Ward filed a second Charge of Discrimination with the IDHR, alleging that he had been laid off in retaliation for filing the First Charge. (Dkt. 38, Ex. 29.)

**ANALYSIS**

Title VII prohibits an employer from retaliating against an employee for having filed a charge of unlawful employment practices. 42 U.S.C. § 2000e-3. To state a claim of retaliation

---

[12] The hearing officer's recommended decision stated as follows:

> As a result of the discharge hearing held on November 15, 2013, I find that Mr. Ward failed to manage and supervise staff such that the sanitary conditions of the school were compromised when areas in the school were not properly cleaned. I find that Mr. Ward exhibited excessively poor attendance and tardiness when he consistently reported to work late, left work early and altered his work schedule without permission. Finally, I find that Mr. Ward was verbally abusive when he yelled at Principal Asiyanbi stating, "I'm leaving, see you, write it up and fuck you. You heard what I said, and I'm tired of this motherfucker." This conduct was also unbecoming of a Chicago Public Schools' employee. I recommend that Mr. Ward be discharged.

(Dkt. 38-27). Ward disagrees with the hearing officer's findings and asserts that the charges against him were false and that no aspect of Ward's conduct made it "necessary" for the Board to convert his layoff to a termination or place him on the "Do Not Hire" or "Do Not Rehire" lists. There is no dispute, however, that the findings and recommendation for discharge were as stated by the hearing officer.

under Title VII, "a plaintiff must show that: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) a causal connection exists between the two." *King* v. *Ford Motor Company*, 872 F.3d 833, 841 (7th Cir. 2017) (citing *Carter* v. *Chi. State Univ.*, 778 F.3d 651, 657 (7th Cir. 2015); *Collins* v. *Am. Red Cross*, 715 F.3d 994, 998 (7th Cir. 2013)). For purpose of a summary judgment analysis, "the question is whether the evidence could support a causal connection between those instances of protected activity and those adverse actions," *King*, 872 F.3d at 841-42. In deciding that question, the court must "consider the evidence as a whole and ask whether a reasonable jury could draw an inference of retaliation." *Id.* at 842 (citing *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 764-66 (7th Cir. 2016)).

The Board argues that there is no evidence of a causal relationship, nor does the evidence as a whole point to retaliation. Ward argues that several pieces of evidence point to a retaliatory motive: the CEO's involvement in Ward's termination proceedings during the pendency of the First Charge, the circumstances surrounding Ward's 2012-2013 unsatisfactory rating coupled with suspicious timing, concealment of Ward's unsatisfactory rating, and the fact that other similarly situated CPS employees have not been subjected to layoff and firing.

The Board contends that Ward has no evidence other than his bare assertions that any deciding official even knew of the First Charge when the moves toward termination took place. In response, Ward argues, essentially, that the CEO and other "relevant personnel" must have known of the First Charge when it proceeded towards firing him. Because an employer is by law notified that a charge has been filed against it, it is fair to infer that at least someone at the Board's offices knew of the First Charge. Ward also testified at his discharge hearing that he had filed a charge with the IDHR in February or March of 2013, indicating that the hearing officer knew that much. Plaintiff has no evidence, however, that the CEO in particular or any other

Board employee involved in his termination had actual knowledge of the First Charge. For example, Ward has no documentary discovery from the Board's files concerning the charge and no testimony from any witness pointing to knowledge. Although he points to the CEO's "involvement" in his termination, Ward has no evidence of the nature of her involvement beyond accepting the recommendations for discharge. Further, there is no evidence that the Principal knew of the charge at the time he made any criticisms of Ward's performance or sought his removal from Till (not termination from employment), which is the incident that set the termination in motion. Nor is there any evidence that anyone under the CEO's or the general counsel's office communicated with the Principal before his conflict with Ward erupted.

Ward speculates that the Principal fabricated the accusations of poor performance and insubordination, failed to give him his performance ratings, and delayed giving him the cautionary notices until July, 2012 (such that Ward was deprived of the opportunity to improve his performance). He accuses the Principal of lying to Krieger about the October Incident and believes that the Principal's "emotionally charged" email further reflects the intention to unjustifiably cause his termination. All of this, Ward argues, could lead a reasonable jury to find that Ward's unsatisfactory performance rating for the 2012-2013 school year was falsely manipulated by Board personnel to reflect adversely on Ward, who was actually performing satisfactorily at all times during the 2012-2013 school year. Unfortunately for Ward, speculation is insufficient to raise a genuine issue of material fact. *See*, *e.g.*, *Stagman* v. *Ryan*, 176 F.3d 986, 995 (7th Cir.1999) ("[S]tatements outside the affiant's personal knowledge or statements that are the result of speculation or conjecture or merely conclusory do not meet [requirements of Rule 56(e) of the Federal Rules of Civil Procedure].").

Similarly, Ward's reliance on the fact that he was fired within months after he filed the First Charge is insufficient to withstand summary judgment. *See*, *e.g.*, *Reynolds* v. *Champaign*

9

*Urbana Mass Transit Dist.*, 378 Fed. Appx. 579, 582 (7th Cir. 2010) (citing cases) ("[S]uspicious timing alone is almost never enough to satisfy the causation prong of a plaintiff's burden at summary judgment."). Finally, Ward's assertion in his Affidavit that another employee (Johnson) was also rated Unsatisfactory and was among the 25 engineers laid off (even if admissible, which it is not) shows nothing where there is no evidence that the employee, like Ward, had previously filed a charge of discrimination.

Fundamentally, Ward's case must fail for lack of any evidence of a connection between the First Charge and his termination. Even if what he says is true—that the Unsatisfactory rating was entirely based on trumped-up allegations—this court cannot right that wrong where there is no evidence that his exercise of rights protected by Title VII had anything to do with it. *See King*, 872 F.3d at 842 (explaining that the court's concern is not whether the decision to fire the former employee was correct but whether it was retaliatory); *Uhl* v. *Zalk Josephs Fabricators, Inc.*, 121 F.3d 1133, 1137 (7th Cir. 1997) ("A personality conflict doesn't ripen into an ADA claim simply because one of the parties has a disability."). In short, the evidence viewed as a whole and in a light favorable to Ward would not permit a reasonable jury to conclude that the reason for the discharge was retaliation under Title VII.

## ORDER

For the reasons stated above, the Board's motion for summary judgment (dkt. 36) is granted. The court is directed to enter judgment in favor of the defendant. This case is terminated.

Date: April 30, 2018

_____
U.S. District Judge Joan H. Lefkow